IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Equal Employment Opportunity Comm'n,    Case No. 3:13CV1662

    Plaintiff

v.     **ORDER**

Kyklos Bearings Int'l, LLC, et al.,

    Defendants

    This is a suit by the Equal Employment Opportunity Commission (EEOC) against Kyklos Bearings, International, LLC (Kyklos), the former employer of Dominique Price. The EEOC alleges that Kyklos fired Ms. Price because it wrongly perceived her to be disabled in violation of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101(3).

1

Pending is the defendant's motion for summary judgment (Doc. 47), in which it contends that Ms. Price was unable to perform essential functions of her job and, though it tried in good faith to accommodate her disability, it was unable to do so.

Also pending is third-party defendant UAW Local 913's motion for summary judgment (Doc. 37).

For the reasons that follow, I deny both motions for summary judgment.

## Background[1]

Ms. Price initially worked for Kyklos from 2006 until April, 2011, when Kyklos laid her off due to lack of work. During that period, she worked as a "tugger," using a motorized scooter to move materials and products, including "trains" of carts holding up to 4400 pounds of bearings. Her job involved, however, lifting only up to fifty pounds.

During 2007-08, following a diagnosis of breast cancer, she was treated, recovered, and returned to her job as a tugger in July, 2008. The company laid her off for business-related reasons in August, 2011. Kyklos recalled her in April, 2012.

On being recalled, Price had to pass a company physical examination. The company doctor, Dr. Watkins-Campbell, determined that she was fit to return to work as a tugger and to operate an aerial lift and forklift.

After working for a while in another position, Ms. Price was able to bump back into her original position as a tugger. On her first day back in that job, she encountered a train of overloaded

---

[1] Kykos disputes many of Ms. Price's factual allegations and seeks, in effect, to have me rule in its favor on the basis of its factual contentions. That, of course, I cannot do; instead, I must view, and have viewed (and summarize herein) the facts from a position most favorable to Ms. Price and the EEOC.

carts wedged against a wall in such a way that she could not hitch her scooter to move them. Being unable to move the carts manually, and as company policy permits, she asked her supervisor, Michael Ryan, for help in dealing with the immobile carts.

According to Ms. Price, "They asked me to pull *a* train and I can't pull *it*" and "I could not pull *that* train." (Emphasis supplied).

Rather than responding to Ms. Price's request, which, according to her, was not uncommon within the plant, for help, Ryan told her to report to the medical department. He did so without viewing the stuck carts.

Ms. Price did what Ryan told her to do and went to the medical department. A Registered Nurse, Richard Gorbach, who has no specialized training in the sequella of breast cancer treatment, saw Ms. Price. After Ms. Price told Gorbach she had been unable to move the train, he immediately placed her under a medical restriction. He did so without questioning her and even though Ms. Price had not told him that she was unable to lift.

Nonetheless, Gorbach restricted Ms. Price to lifting no more than seven pounds with her left arm. His sole basis for the restriction was her chart. There is no record that he conducted any tests before imposing the restriction.

Pursuant to company policy, the General Supervisor, David Miller was notified of the restriction. He told Ms. Price to see Dr. Watkins-Campbell on April 25, 2012. The doctor asked Ms. Price to touch her toes, but otherwise did not conduct an examination.

Instead, Dr. Watkins-Campbell asked Ms. Price if she had swelling in her arm after her cancer surgery, which had included a mastectomy. Ms. Price told the doctor that, though her physician had told her about swelling, she had not experienced that condition.

When it occurs, such swelling is lymphedema; it can result from removal of lymph nodes during cancer surgery. Ms Price made clear to Dr. Watkins-Campbell that she had not experienced any swelling, yet the doctor diagnosed her with lymphedema and imposed a permanent seven pound limit on lifting.

Before imposing this restriction – which made it impossible for Ms. Price to continue working as a tugger – Dr. Watkins-Campbell did not measure Price's arms to document any alleged swelling. Dr. Watkins-Campbell acknowledged there were several things she did not know, or could not recall knowing, when she imposed the restriction, including:

- whether Ms. Price could lift sample parts the doctor had at hand for determining an employee's lifting ability;

- how Price reacted to lifting parts or whether she struggled to lift parts;

- Ms. Price's grip strength;

- whether Ms. Price was receiving treatment for lymphedema;

- who Ms. Price's treating physicians were;

- what the treating physician might have said about her condition or his records might have indicated;

- the type of mastectomy Ms. Price underwent;

- when any alleged lymphedema would have started.

Contrary to Ms. Price's testimony, Dr. Campbell-Watkins stated that Ms. Price admitted having had lifting problems and needing help from co-workers dating back to 2008. To the extent that Ms. Price had sought help, doing so from time to time was normal and routine; her requests were not the result of a medical condition.

Dr. Brian Murphy, a board certified oncologist with the Cleveland Clinic has treated Ms. Price since 2007. He diagnoses and treats patients with lymphedema, a condition that arises within a few months of surgery. Diagnosis of this condition requires comparing the patient's arms to rule out other causes of any swelling. Current surgical techniques have reduced the incidence of post-mastectomy lymphedema. It is Dr. Murphy's opinion that Price does not have lymphedema.

In contrast to Dr. Murphy, Dr. Watkins-Campbell:

- has no specialized training regarding lymphedema;
- her knowledge of the condition results from her personal experience following a mastectomy and removal of forty-one lymph nodes.

Dr. Watkins-Campbell, who did not know how many lymph nodes Ms. Price's surgeon had removed, acknowledged her own loss of forty-one lymph nodes had not resulted in lymphedema in her own case.

After Dr. Watkins-Campbell imposed the seven-pound lifting restriction, Kyklos tried to accommodate what, as a result of that restriction, it viewed as Ms. Price's disabled condition. It did so though Ms. Price had not requested an accommodation.

Ms. Price went on her own to Dr. Al-Turk, whose office is next to the Kyklos premises; he is familiar with what workers do in the plant. On examining the plaintiff, he gave her a note saying she could work without restrictions. She also told company officials her treating doctor had cleared her to return to work.

When Price offered Dr. Al-Turk's note, George Whittakre, who oversees all human resources operations for the facility, he responded that he was not required to listen to any doctor other than Dr. Watkins-Campbell. According to Whitaker, "I don't need another physician" and the company doctor's opinion was conclusive.

On May 14, 2012, Kykos sent a letter to Ms. Price firing her because, in its view, she had misrepresented her medical condition during her pre-employment physical and, had she been truthful about her condition she would not have been hired.

Since losing her job as a tugger with Kyklos, Ms. Price has obtained a tugger job at Ventra, another auto parts supplier. There are no significant differences between her job there and the work she was doing for Kyklos before Dr. Watkins-Campbell imposed the seven-pound lifting restriction.

Shortly after being fired, Ms. Price filed an ADA discrimination charge with the EEOC. In her charge, she stated, "I believe I could have performed the essential functions of the position with an accommodation." On review, the EEOC concluded that the defendant's response to her circumstances did not require an accommodation, but, instead, showed that it unjustifiably and unlawfully regarded her as disabled. It brings this suit on that basis.

## Discussion

The ADA protects, *inter alia*, someone who "is regarded as having" a physical "impairment that substantially limits one or more of her major life activities." 42 U.S.C. § 12102(1).[2]

Kyklos viewed Ms. Price as afflicted with lymphedema and unable to lift more than seven pounds. As a result, Ms. Price comes within "the definition of one regarded as having a disability" because Kyklos "ascribe[d] to [her the] inability to perform the functions of [her] job because of a medical condition when, in fact, [she was] perfectly able to meet the job's duties." *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir.2001). "Under. . . this portion of the statute, an individual may

---

[2] I agree with the EEOC that its proof can show Ms. Price was "otherwise qualified" and able to perform her duties: aside from the medical evidence from her treating physician and Dr. Al-Turk, there is the fact that, at the time the agency filed this suit, she was working at essentially the same kind of job. She also, obviously, satisfies the "adverse action" element of the agency's ADA claim.

invoke the ADA's protection even if he is not, in fact, disabled." *Id.* "[T]he drafters of the ADA and its subsequent interpretive regulations clearly intended that plaintiffs who are mistakenly regarded as being unable to work have a cause of action under the statute." *Id*. at 709.

Importantly, "[t]he ADA mandates an individualized inquiry in determining whether an employee's disability or other condition disqualifies him from a particular position." *Holiday v. City of Chattanooga*, 206 F.3d 637, 643 (6th Cir.2000). To satisfy this mandate, "[t]he employer must conduct an individualized inquiry into *the individual's actual medical condition*, and the impact, if any, the condition might have on that individual's ability to perform the job in question." *Id.* (citing *Estate of Mauro v. Borgess Med. Ctr*., 137 F.3d 398 (6th Cir.1998)).

Under the 2008 amendments to the ADA

> An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

42 U.S.C. § 12102(3)(A); *see also* 29 C.F.R. § 1630.2(1). *See Lovell v. Champion Car Wash, LLC*, 969 F. Supp. 2d 945, 952 (M.D. Tenn. 2013) (denying motion for summary judgment where defendant terminated the plaintiff because it believed that a heart condition prevented him from working at any of its car washes); *Hoback v. City of Chattanooga*, 2012 WL 3834828, *5 (E.D. Tenn.) (denying motion for judgment as a matter of law where defendant concedes it terminated plaintiff due to its belief that plaintiff had PTSD).

These cases fit this situation, especially in light of the 2008 ADA amendments

Moreover, Kyklos, according to Gary L. Smith, its Supervisor of Labor Relations, told Ms. Price that, once she had met with Dr. Watkins-Campbell, "physical restrictions were issued such that we have no work available that you can perform." It is undisputed, in light of the termination letter, that Kyklos would not have hired Price had it believed that she had lymphedema at the time of her pre-employment physical.

7

This express statement shows, along with the other evidence, that Kyklos regarded Ms. Price as unable to do her tugger job on the basis of a condition that a jury could find she did not have, and as to which there was no basis, much less a rational basis, for concluding she did have. In reaching this conclusion, a rational jury could find that Kyklos failed to conduct an individualized inquiry into Ms. Price's actual medical history and condition.

In the face of the evidence on which the EEOC relies, Kyklos offers a different, but for purposes of this opinion, largely immaterial version of underlying facts, particularly with regard to what, *inter alia*, Ms. Price told Dr. Watkins-Campbell and what the doctor did in response.

Otherwise, Kyklos offers, in support of its motion for summary judgment, only the statement in Price's charge that she "could have performed the essential functions of the position with an accommodation." I disagree that this conclusory statement (which sounds like something that the interviewer may have concluded, rather than Price stated) entitles Kyklos to summary judgment.

Even if that was how Ms. Price formulated her situation, her doing so in that manner is understandable, as that is how the company had consistently viewed its obligation to and treated her. As a lay person anxious to continue working at a job she believed she could perform, she should not be faulted – at this stage, at least – for expressing herself in those terms.

At most, in light of the evidence the EEOC offers in support of its "regarded as" claim, the effect of that statement is its possible use and utility for impeachment of Ms. Price.

In any event, I agree with the EEOC that a charging party's formulation of the nature of the unlawful activity cannot preclude the agency, on investigating the situation, from concluding that the employer's treatment of the charging policy falls within a different category of unlawful conduct. *See EEOC v. Hernando Bank*, 724 F.2d 1188 (5th Cir. 1984); *see also E.E.O.C. v. MCI Intern., Inc.*,

829 F.Supp. 1438, 1482 (D.N.J.,1993) ("charges of retaliation and failure to rehire relate to discrimination based on age, the same as the [layoff-related] original charges filed with the EEOC."); *cf. Washington v. Kroger Co.* , 671 F.2d 1072, 1076 (8th Cir. 1982) ("procedural requirements should not be applied with an unrealistic or technical stringency to proceedings initiated by uncounselled complainants"). I conclude, accordingly, that how Ms. Price understood and formulated her claim of discrimination in violation of the ADA did not bar the EEOC's ability to assert an ADA claim on a different legal theory.

The agency asserts that its proof shows that Kyklos failed to conduct an adequate investigation into Ms. Price's medical condition. That proof, a rational jury could find, was that, as in *Holiday v. City of Chattonooga*, 206 F.3d 637, 645 (6th Cir. 2000), Dr. Watkins-Campbell's imposition of a seven-pound lifting restriction was "unsupported by any concrete medical findings and is also at odds with the objective evidence on the record." Indeed, if the doctor's examination of Ms. Price was as sparse as she claims, that investigation was even more superficial than that found insufficient in *Anderson v. General Motors, LLC*,, 2014 WL 4494324, *10 (E.D. Mich.) (holding that it was improper to impose lifting restriction, even though company doctor did grip strength and range of motion tests and reviewed some of the employee's medical records).

## Conclusion

How Kyklos seeks to frame the legal issue – namely, as one relating to its inability to accommodate a disability – simply misses the mark. The agency eschews any such contention: this is a "regarded as," not a failure to accommodate case.

At this point, the EEOC has shown that, if its factual basis finds sufficient traction with the jury, it can prevail. The same grounds set forth in this order also show that the third-party defendant's motion for summary judgment lacks merit. In light of the foregoing, it is hereby

ORDERED THAT defendant's motion for summary judgment (Doc. 47) and third-party defendant's motion for summary judgment (Doc. 37) be, and the same hereby are denied.

The Clerk shall forthwith schedule a status/scheduling conference.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge